**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARIA G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Civil Action No. 24-7056 (MAS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Maria G.'s ("Plaintiff")[1] appeal of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, the final decision of the Commissioner is affirmed.

**I.   BACKGROUND**

In this appeal, the Court must determine whether there is substantial evidence that supports the Administrative Law Judge's ("ALJ") finding that Plaintiff is not disabled. The Court begins with the procedural posture and the ALJ's decision.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A. Procedural Posture

Plaintiff filed an application for DIB in August 2021, alleging a disability onset date of October 2, 2019. (AR 17, ECF No. 4.[2]) Plaintiff remains insured until March 31, 2026. (*Id.* at 18.) The Social Security Administration (the "Administration") denied Plaintiff's application both initially and on reconsideration. (*Id.* at 17.) Thereafter, Plaintiff requested a hearing (*id.* at 79-86), and the ALJ held that hearing on July 18, 2023. (*Id.* at 143-47.) The ALJ issued a written decision on September 29, 2023, where she determined that Plaintiff was not disabled and could perform light work at a reduced level. (*Id.* at 22-28.) Plaintiff appealed that decision, and the Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-3.) The present appeal followed. (ECF No. 1.) On October 30, 2024, Plaintiff filed her opening brief. (ECF No. 7.) The Commissioner opposed (ECF No. 9), and Plaintiff replied (ECF No. 10).

### B. The ALJ's Decision

The ALJ, in a written decision, concluded that Plaintiff was not disabled under the prevailing administrative regulations during the relevant time period. (AR 28.) To begin, the ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 18-19 (citing 20 C.F.R. § 404.1520(a)).)

At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity" since October 2, 2019, the alleged onset date of her disability. (*Id.* at 20 (citing 20 C.F.R. § 404.1571).) At step two, the ALJ found that Plaintiff suffered from several severe impairments, namely disorder of the spine, degenerative joint disease status-post total knee replacement and

---

[2] The Administrative Record ("Record" or "AR") is available at ECF Nos. 4-1 through 4-9. The Court will reference the relevant page numbers in the Record and will not reference corresponding ECF page numbers within those files.

obesity, and that Plaintiff's neoplasm of thyroid, sinusitis, pharyngitis, and cough/respiratory issues were non-severe. (*Id.* (citing 20 C.F.R. § 404.1520(c)).)

Despite Plaintiff's several severe impairments, the ALJ determined at step three that Plaintiff's impairments did not meet or medically equate to one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526 during the relevant time period. (*Id.* at 21-22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).)

The ALJ then considered the record and determined that through the date last insured, Plaintiff had the residual functional capacity ("RFC"):

> to perform light work as defined in 20 C[.]F[.]R[.] [§] 404.1567(b). She can stand and walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. She can lift and carry twenty pounds occasionally and ten pounds frequently. She can occasionally climb ramps and stairs but cannot climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel and crouch. She can occasionally crawl. She must avoid less than occasional exposure to cold. She cannot be exposed to unprotected heights or hazards.

(*Id.* at 22.) In determining that Plaintiff had the RFC "to perform light work" subject to certain limitations, the ALJ examined Plaintiff's medical records, Plaintiff's subjective complaints and testimony, and the opinion of an independent vocational expert. (*Id.* at 19-28.)

At step four, the ALJ concluded that Plaintiff was "capable of performing past relevant work as a teller and salesperson/customer service." (*Id.* at 28 (citing 20 C.F.R. § 404.1565).) As Plaintiff "ha[d] the [RFC] to do her past relevant work," the ALJ found Plaintiff was not disabled. (*Id.* at 19, 28 (citing 20 C.F.R. § 404.1520(f)).)

3

## II.     LEGAL STANDARD

### A.     Standard of Review

When examining an appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is defined as: "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

When reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its] own conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if the decision is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)).

Even amid this deferential standard, the Third Circuit has explained that the Court's review must be a qualitative exercise requiring a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence [or absence] of substantial evidence is not merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (alteration in original) (citation omitted). It is, thus, necessary for ALJs to analyze all probative evidence and set out the reasons for their decisions. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). If the ALJ has not analyzed all probative evidence and has not sufficiently explained the weight given to the evidence, the decision is not supported by substantial evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[T]o say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (citation omitted)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B. Establishing Eligibility for DIB

To be eligible for DIB under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, a claimant must establish that she has not engaged in any substantial gainful activity since the onset of her alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, a claimant must establish that she suffers from a "severe impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The claimant bears the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The third step requires that a claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to disability insurance benefits. *Id.* If she cannot so demonstrate, the eligibility analysis proceeds

6

to step four. The fourth step of the analysis requires the ALJ to determine whether a claimant's RFC permits her to resume previous employment. *Id.* § 404.1520(e). If a claimant's RFC permits previous employment, the claimant is not "disabled" and thus not entitled to disability insurance benefits. *Id.* § 404.1520(f). Importantly, the burden of persuasion rests with the claimant in the first four steps. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant will receive disability insurance benefits. *Id.*

### III. DISCUSSION

Plaintiff alleges that the ALJ erred in her decision denying DIB because she failed to properly evaluate the supportability and consistency of Dr. William Lagrada's ("Dr. Lagrada") medical opinion, resulting in "legal error and frustrating meaningful review." (Pl.'s Moving Br. 10; Pl.'s Reply Br. 1, ECF No. 10.) The Court disagrees.

Plaintiff contends that the ALJ failed to properly analyze Dr. Lagrada's medical opinion by: (1) rejecting it as unpersuasive without supporting that conclusion with substantial evidence; and (2) not specifically addressing conflicting evidence in the record. (Pl.'s Moving Br. 10-14.) The ALJ, in her written decision, addressed the unpersuasive nature of Dr. Lagrada's medical opinion with the following reasoning:

> [Plaintiff]'s primary care physician, Dr. Lagrada[,] submitted medical opinions limiting the claimant to a reduced range of light work, but noted claimant required the use of a cane, needs to lie down two times during the workday, would be off task 25% of the workday and would be absent from work three days a month (Exhibits 10F and 13F). The doctor cites diagnoses of lower back pain (which the undersigned notes is a symptom and not a diagnosis); radiculopathy, history of osteoarthritis of both knees and

7

> history of bilateral knee replacement but it appears the doctor only treats the claimant for non-disabling conditions involving sinusitis, pharyngitis, and cough/respiratory issues. However, Dr. Lagrada's opinion is found unpersuasive for several reasons. First, the doctor cited several orthopedic diagnoses for which he is not treating the claimant. Second, the doctor's own treating notes lack discussion of any of these orthopedic issues. Third, Dr. Lagrada's opinion conflicts with the opinion of claimant's treating orthopedist, who failed to assign restrictions post total knee replacement. Finally, the more current treatment records submitted by Dr. Lagrada at Exhibit 13F covering the period from October 2021 through November 2022 are not supportive of his opinion because they show unremarkable musculoskeletal examinations.

(AR 26.)

Plaintiff first argues that the ALJ's decision was not supported by substantial evidence because the ALJ cites to treatment records submitted by Dr. Lagrada in Exhibit 13F, but the treatment records in Exhibit 13F were not completed by Dr. Lagrada. (Pl.'s Moving Br. 12; AR 732-52.) Rather, they were completed by Dr. Narendra Gupta ("Dr. Gupta").[3] (*Id.*) Plaintiff further argues that, because the ALJ misnamed the treating physician, "it is unclear what records the ALJ is referring to." (Pl.'s Moving Br. 12.)

The Court agrees that it is unclear whether the ALJ's misattribution of "the more current treatment records . . . show[ing] unremarkable musculoskeletal examinations" (AR 26) to Dr. Lagrada was caused by a typographical error, but any such error is immaterial here. "In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent," and in this present case the ALJ's reference to treatment records "covering the period from October 2021 through November 2022," (AR 26), is clearly intended to refer to the actual records of examination that compose nearly the entirety of Exhibit 13F, those

---

[3] Both Dr. Lagrada and Dr. Gupta practice at the same healthcare facility—Marlboro Medical Center. (*See* Def.'s Opp'n Br. 17, ECF No. 9.)

records being the examinations done by Dr. Gupta that cover those aforementioned dates (AR 732-52). *Pleger v. Kijakazi*, No. 20-261, 2022 WL 205728, at *2 (W.D. Pa. Jan. 24, 2022) (quoting *Amy A. v. Kijakazi*, No. 20-7655, 2021 WL 5864063, at *5 (D.N.J. Dec. 10, 2021) (citations omitted)); *Cf. Marciante v. Berryhill*, No. 18-1144, 2019 WL 2718377, at *4 (D.N.J. June 28, 2019) ("[I]t is not error to omit a doctor's name if it is clear from the ALJ's decision that [s]he considered the relevant evidence.").

Even if this Court were to find that the mistaken reference to Dr. Lagrada, rather than Dr. Gupta, reflects a misunderstanding regarding the name of the doctor who submitted the treatment records rather than a typographical error, remand is unwarranted "[w]here [the district court] is confident that an ALJ['s] error had no effect on the outcome of the case." *Pack v. Comm'r of Soc. Sec.*, No. 20-1128, 2021 WL 3682151, at *2 n.2 (W.D. Pa. Aug. 19, 2021) (citing *Rutherford*, 399 F.3d at 553). The ALJ cites Exhibit 13F in explaining that "more current treatment records . . . are not supportive of [Dr. Lagrada's] opinion because they show unremarkable musculoskeletal examinations[,]" and these records would be unsupportive of the medical opinion regardless of the identity of the treating physician. (AR 26.) Because it is not "unclear what records the ALJ is referring to" and thus this Court does not have to "speculate on what evidence led the ALJ to the conclusions set forth in the decision," this particular error, in and of itself, does not undermine a proper supportability analysis. (Pl.'s Moving Br. 12); *Diggin v. Saul*, No. 19-22, 2019 WL 3495593, at *10 (E.D. Pa. July 31, 2019) (citing *Burnett*, 220 F.3d at 119).

Plaintiff next argues that the ALJ failed to adequately explain how Dr. Lagrada's medical opinion lacks support and is inconsistent with the evidence in the record. (*See generally* Pl.'s Moving Br.) As stated in 20 C.F.R. § 404.1520c(b)(2), the supportability and consistency factors are "the most important factors" the ALJ considers when determining the persuasiveness of

9

medical evidence, and the ALJ's analysis of those factors must be explained when examining a medical opinion. *See Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (citation omitted) ("[ALJs] [are required] to explain only two of these factors: whether medical opinions were[:] (1) based on 'objective medical evidence and supporting explanations'[;] and (2) consistent with other medical opinions."). "Supportability" is the extent to which the medical source presented "relevant [] objective medical evidence and . . . explanation[]," and "consistency" is the extent to which the medical opinion is consistent with other evidence. 20 C.F.R. §§ 404.1520c(c)(1)-(2). The ALJ, however, "need not reiterate the magic words 'support' and 'consistent' for each doctor," and may "weave [discussion of] supportability and consistency throughout her analysis of which doctors were [more] persuasive." *Zaborowski*, 115 F.4th at 639.

Here, the Court finds that the ALJ's determination that Dr. Lagrada's medical opinion was unpersuasive includes an adequate indication of her evaluation of the supportability and consistency factors. Plaintiff nonetheless contends that the "ALJ's supportability analysis is not supported by substantial evidence and fails to meet the articulation requirement of 20 C.F.R. § 404.1520c(b)(2)" as the ALJ does not "connect any of th[e] evidence" with her rejection of the medical opinion. (Pl.'s Moving Br. 12.) These contentions are unpersuasive, as the ALJ points to the fact that Dr. Lagrada was not treating Plaintiff for the orthopedic conditions he cited as the basis for her limitations and provided no treatment records addressing those issues—only a medical opinion outlining his recommended restrictions. (AR 26.) As the ALJ may also utilize "what [the record] does not say," when analyzing a medical opinion, the lack of evidence that Dr. Lagrada treated or even discussed in-depth Plaintiff's orthopedic diagnoses is sufficient to satisfy the burden of substantial evidence, defined as just "more than a mere scintilla," needed to satisfy the supportability factor analysis. *Lane v. Comm'r of Soc. Sec.*, 100 F. App'x 90, 95 (3d Cir. 2004)

10

(citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983)); *Richardson*, 402 U.S. at 401. Although Plaintiff may not find the ALJ's rather brief rejection of Dr. Lagrada's opinion ideal, "'[t]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph' will suffice" when finding medical evidence unpersuasive. *Jennifer M. v. Comm'r of Soc. Sec.*, No. 22-713, 2023 WL 2601754, at *4 (D.N.J. Mar. 22, 2023) (quoting *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981)).

Plaintiff further asserts that the ALJ failed to identify any specific evidence in the record that contradicts the numerous limitations outlined in Dr. Lagrada's medical opinion, aside from noting that Plaintiff's orthopedic doctor did not impose restrictions following her total knee replacement, and argues that this fails to demonstrate how Dr. Lagrada's medical opinion is inconsistent with the record. (Pl.'s Moving Br. 12-13.) The ALJ, however, cites not only to the orthopedic doctor who did not place Plaintiff under any restrictions (AR 26), but also to the treatment records from Marlboro Medical Center within Exhibit 13F that demonstrate Plaintiff's "unremarkable musculoskeletal examinations" (*Id.* at 26, 742, 744, 748, 751). When also "considering the ALJ's previous citations to the objective record," which includes the finding of DDS consultants who found "insufficient evidence" for the musculoskeletal allegations at hand (AR 26), the ALJ has sufficiently satisfied the consistency factor analysis. *Joseph P. v. Comm'r of Soc. Sec.*, No. 21-13524, 2023 WL 1929945, at *4 (D.N.J. Feb. 10, 2023) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (stating that ALJ opinions may be "read as a whole" to determine if the ALJ had considered the appropriate factors)).

As a "treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record,'" and the ALJ does cite different sources to explain why Dr. Lagrada's opinion is inconsistent with the record (AR 26), the ALJ did not err

11

when finding the opinion unpersuasive. *Scouten v. Comm'r Soc. Sec.*, 722 F. App'x 288, 290 (3d Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2)). This Court is, therefore, satisfied that the ALJ conducted a proper analysis of the supportability and consistency factors when finding Dr. Lagrada's medical opinion unpersuasive.

IV.  **CONCLUSION**

For the reasons set forth above, the Commissioner's decision is affirmed. The Court will issue an Order consistent with this Memorandum Opinion.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE